UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREENTREE REAL ESTATE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:08-cv-0080-DFH-DML |
| ) | |
| BRIDGER COMMERCIAL FUNDING, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION TO DISMISS

In 2007, plaintiff Greentree Real Estate, LLC and defendant Bridger Commercial Funding, LLC entered into a Rate Lock Agreement in connection with Greentree's efforts to refinance an apartment complex. After Greentree had paid Bridger $315,000 for the Rate Lock Agreement, the broader deal eventually fell through and no loan was made. Greentree has sued Bridger in this diversity action for breach of contract, illusory contract, breach of good faith, unjust enrichment, and violations of Indiana and California securities laws. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Bridger has moved to dismiss the state securities law counts, Counts V and VI, for failure to state a claim upon which relief may be granted. As explained below, Bridger's motion to dismiss is denied.

When a defendant moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must treat as true all of the well-pleaded facts in the

complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiff. A formulaic recitation of the elements of the cause of action is not enough to survive a motion to dismiss under Rule 12(b)(6). See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must "raise a right to relief above the speculative level" by pleading enough facts to state a claim to relief that is plausible on its face. *Id.* at 555-56. Dismissal is warranted if the factual allegations, even when seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Id.* at 561-62.

In light of that standard, the court assumes that on November 9, 2006, Bridger issued an Application Letter to Greentree for a loan in the amount of $11,700,000 to refinance the Greentree Apartments. Bridger offered Greentree the opportunity to pay a deposit to fund a separate "Rate Lock Agreement" to lock in a beneficial interest rate on the loan. On March 13, 2007, the parties entered into a Rate Lock Agreement setting the interest rate at 5.63 percent per year with a maximum annual interest rate of 5.82 percent per year. To complete the Rate Lock Agreement, Greentree was required to deposit $315,000 with Bridger, which Greentree accomplished by opening a letter of credit on March 16, 2007 in Bridger's favor. But in January 2008, Bridger informed Greentree that it would not issue a loan at the stated rate and demanded an additional $420,000 deposit. Greentree did not pay the additional deposit, and no loan was ultimately executed between Bridger and Greentree. Dkt. 67.

The issue here is whether Indiana's and California's securities laws apply to the Rate Lock Agreement and Bridger's alleged conduct. Greentree alleges that Bridger acted as a "broker-dealer" and/or "investment advisor" under Indiana's and California's securities laws and that Bridger violated those laws regarding registration and licensing requirements, disclosure requirements, and prohibited practices.

Bridger first points out that the Rate Lock Agreement states that Bridger is not Greentree's "agent, fiduciary, broker, advisor or consultant," Dkt. 67, Ex. B, and that the Rate Lock Agreement "shall in no way be construed to . . . purchase or sell any securities on behalf of Borrower and/or any third party." These contract provisions do not control application of the state securities laws. Indiana securities law provides: "A condition, stipulation, or provision binding a person acquiring a security to waive compliance with this chapter or a rule or order under this chapter is void." Ind. Code § 23-2-1-19(i) (2007). California law is substantially similar. See Cal. Corp. Code § 25701. The disclaimers in the Rate Lock Agreement do not, by themselves, defeat application of the state securities laws.

Bridger argues that the Rate Lock Agreement is not defined as a "security" under Indiana's and California's securities laws. Under Indiana securities law in 2007, a "security" was defined as a

> note, stock, treasury stock, bond, debenture, evidence of indebtedness . . . certificate of interest or participation in a profit-sharing agreement, *commodity futures contract, option, put, call, privilege, or other right to purchase or sell a commodity futures contract, margin accounts for the purchase of commodities or commodity futures contracts . . . investment contract* . . . or, in general, an interest or instrument commonly known as a "security", or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant, option, or right to subscribe to or purchase, any of the foregoing.

Ind. Code § 23-2-1-1(k) (2007) (emphasis added).[1]  Under California securities law,

a "security" is defined as

> any note; stock; treasury stock, membership in an incorporated or unincorporated association; bond, debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; *investment contract*; viatical settlement contract or a fractionalized or pooled interest therein; life settlement contract or a fractionalized or pooled interest therein; voting trust certificate; certificate of deposit for a security . . . put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; any beneficial interest or other security issued in connection with a funded employees' pension, profit sharing, stock bonus, or similar benefit plan; or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest or participation in temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.  All of the foregoing are securities whether or not evidence by a written document.

Cal. Corp. Code § 25019 (emphasis added).  Greentree argues that the Rate Lock

Agreement was a security under Indiana securities law because it was either a

---

[1] Indiana's securities laws have been amended and recodified since the Rate Lock Agreement was signed on March 13, 2007.  Under the amended statutes, commodity futures contracts are not included in the definition of a security.  Ind. Code § 23-19-1-2(28) (2008).

-4-

commodity futures contract, an investment contract, or one of the other enumerated terms listed in Indiana Code § 23-2-1-1(k) (2007).  Greentree argues that the Agreement is a security under California securities law because it was either an investment contract or one of the other terms listed in Cal. Corp. Code § 25019.

Indiana statutes do not define a "commodity futures contract."  Bridger argues that the Rate Lock Agreement is not a commodities futures contract because Section 10 of the Agreement specifically stated that "this Forward Rate Lock Agreement shall in no way be construed to be a commitment by Lender . . . [to] purchase or sell any securities on behalf of Borrower and/or any third party."  Dkt. 67, Ex. B § 10.  But Sections 2 and 5 of the Rate Lock Agreement state that unspecified hedging arrangements will be used to effectuate the "rate lock."  Dkt. 67, Ex. B.  The agreement explained that Bridger could use Greentree's deposit to hedge the Rate Lock Agreement by purchasing or selling "Treasury notes, bonds or futures contracts, interest rate swaps, derivative Commercial Mortgage Backed Securities . . . or other measures deemed necessary or appropriate by Lender [sic]."  *Id.*, § 2.  Based on changes in the "Hedged Swap yield," however, the agreement could require Greentree to pay additional sums to keep the rate "locked."  *Id.*, § 5.  Greentree contends that such an arrangement amounts in substance to a commodity futures contract under Indiana securities law.

-5-

On the limited record before the court, the court cannot say definitively that the Rate Lock Agreement could not be deemed a commodities futures contract (and thus a security). The court must interpret the definition of security broadly. See *Reeves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (holding that the federal definition of "security" must be broadly construed); Office of the Indiana Secretary of State, *Statement of Policy on Investment Contracts* (1993) (opining that the definition of "security" should be liberally construed in light of Ind. Code § 23-2-1-15 (1993), and must be flexible to prevent fraud), available at http://www.in.gov/sos/securities/orpol.html#invest_con (last visited June 30, 2009); *Commissioner v. Fairshare*, Cal. Dep't of Corp. (Jan. 26, 1999) (incorporating the *Reeves* broad construction of "security" and applying it to California law), available at http://www.corp.ca.gov/OLP/pdf/decisions/288.pdf (last visited June 30, 2009). On the limited record before the court and accepting the facts presented by Greentree as true, the court cannot reject Greentree's claim that the Rate Lock Agreement is a commodity futures contract amounting to a security under Indiana securities law in 2007 or current California law. A more detailed factual inquiry must be conducted to determine if the agreement did indeed constitute a commodity futures contract.

Indiana and California also do not define "investment contract" in the respective statutes. In Indiana, the Secretary of State has the power to define terms, interpret the meaning of undefined terms, and enforce Indiana's securities laws. Ind. Code § 23-19-6-5. In 1993, the Secretary issued a policy statement in

an effort to define "investment contract," the broad term used to prevent sophisticated efforts to avoid the substance of securities laws. The Secretary determined that an investment contract includes, but is not limited to:

> i.) Any investment in a common enterprise with the expectation of a profit to be derived substantially through the managerial efforts of someone other than the investor; or
>
> ii.) Any investment of money or money's worth in the risk capital of a venture with the expectation of some benefit to the investor where the investor has no direct control over the investment or policy decisions of the venture.

Office of the Indiana Secretary of State, *Statement of Policy on Investment Contracts* (1993), available at http://www.in.gov/sos/securities/orpol.html#invest_con (last visited June 30, 2009). The Secretary's policy statement embraces first the Howey Test, see *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), and second the Risk Capital Test. See *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852 (1975); *American Fletcher Mortgage Company, Inc. v. U.S. Steel Credit Corp.*, 635 F.2d 1247, 1253-54 (7th Cir. 1980) (describing the Howey Test); *Hawaii v. Hawaii Market Center, Inc.*, 485 P.2d 105, 109 (Haw. 1971) (criticizing Howey Test as too mechanical and adopting the Risk Capital Test). California courts have adopted the same two tests for investment contracts. See *Silver Hills Country Club v. Sobieski*, 361 P.2d 906, 908-09 (Cal. 1961) (citing the Risk Capital Test); *Moreland v. Dep't of Corporations*, 239 Cal. Rptr. 558, 561-62 (Cal. App. 1987) (recognizing both tests); *People v. Coster*, 199 Cal. Rptr. 253, 256-57 (Cal. App.

1984); *Commissioner v. FairShare*, Cal. Dep't of Corp. (Jan. 26, 1999), available at http://www.corp.ca.gov/OLP/pdf/decisions/288.pdf (last visited June 30, 2009).

Bridger argues that the Agreement does not meet either the Howey Test or the Risk Capital Test. Bridger argues that Greentree had no reasonable expectation of profit or benefit from the Agreement because any profits or benefits were under the exclusive control of Greentree, and Bridger had no control over the management of Greentree's business. If this is the case, one might reasonably ask what exactly Greentree received in return for the Rate Lock Agreement and its $315,000 payment to Bridger?

An expected profit or benefit is not necessarily limited to profit in the accounting sense of the word but can include any economic benefit. Preventing or saving an expense that would have otherwise been incurred is a profit or expected benefit. See Office of the Indiana Secretary of State, *Statement of Policy on Investment Contracts* (1993), citing *Troy v. Lumbermen's Clinic*, 186 Wash. 384 (Wash. 1936). The profit element of the analysis is based on the reasonable expectation of a profit, not whether a profit in fact occurs. *Id.*

The court must assume for now that Greentree reasonably expected to benefit from the Rate Lock Agreement. The interest expense over the life of a multimillion dollar loan is substantial regardless of the actual interest rate applied to the loan. Even minute changes in the actual interest rate applied to a

multimillion dollar loan can have significant effects on the long-term cost of the loan borne by the borrower. Here, the maximum interest rate specified in the Rate Lock Agreement was 5.82 percent and Bridger's proposed new interest rate was 7.10 - 7.30 percent. Over ten years, this difference would have resulted in hundreds of thousands if not millions of dollars of additional interest expense for Greentree. The court infers for now that Greentree reasonably expected to benefit from the Rate Lock Agreement by saving the substantially higher interest expense associated with a higher interest rate. Since preventing an expense that would otherwise be incurred is considered an expected benefit or profit and Greentree expected to derive an economic benefit by "locking in" at a low interest rate, Bridger's argument cannot be upheld, at least at this stage of the case.

Bridger's alleged descriptions of the Rate Lock Agreement indicate that the agreement might amount to a participation in a commodity futures contract, in an option, put, call, privilege, or other right to purchase or sell a commodities or commodity futures contract, or a participation in a margin account for the purchase of commodities or commodity futures contract. The agreement indicated that Bridger would be engaging in a variety of financial transactions to meet its bligations under the agreement, but Greentree retained significant risks based on those transactions, including the prospect that Bridger might be able to "break the Rate lock" based on the results of those transactions. Third Am. Compl. ¶ 16. The court also cannot discount at this stage Greentree's allegation that Bridger

acted as a broker-dealer and/or an investment adviser in connection with the Rate Lock Agreement.

On the present record, the court cannot determine as a matter of law that the Rate Lock Agreement does not meet Indiana's or California's broad statutory definitions of what constitutes a "security." Rate lock agreements have rarely been litigated, especially in the manner proposed in this case. The court does not discount entirely the possibility that these issues might be resolved in defendant's favor as a matter of law, but the current record is simply too sparse to allow the court to reach a conclusion with any confidence. Cf. *Lalonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (reversing dismissal under Rule 12(b)(6) where field of law was "neither mature nor uniform" and court risked high risk of error by ruling on such sparse record); *Nelson v. Ipalco Enterprises, Inc.*, 2005 WL 1924332, *3 (S.D. Ind. Aug. 11, 2005) (denying cross-motions for summary judgment where law was evolving rapidly).

For the foregoing reasons, Bridger's motion to dismiss Counts V and VI (Dkt. 67) is denied.

So ordered.

Date: July 1, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Christopher E. Baker
HOSTETLER & KOWALIK PC
ceb@hostetler-kowalik.com

Andrew M. Bond
POLSINELLI SHALTON FLANIGAN SUELTHAUS, PC
abond@polsinelli.com

Abigail B. Cella
ICE MILLER LLP
abby.cella@icemiller.com

Robert J.E. Edwards
POLSINELLI SHALTON FLANIGAN SUELTHAUS, PC
redwards@polsinelli.com

Gary Lynn Hostetler
HOSTETLER AND KOWALIK
glh@hostetler-kowalik.com

James L. Petersen
ICE MILLER LLP
james.petersen@icemiller.com